WILLIAM J. SCHIEFFELIN, Respondent, *v.* FREDERICK E. GOLDSMITH et al., Appellants.

244

(Argued February 10, 1930; decided March 18, 1930.)

*Edward S. Dore, John Caldwell Myers* and *John F. Collins* for Frederick E. Goldsmith et al., appellants. The requirement that the Mayor appoint a judge from the same political party as the disabled judge is within the power of the Legislature. (*Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377; *People* v. *Palen*, 74 Hun, 289; *Rogers* v. *Common Council of Buffalo*, 123 N. Y. 173; *Kane* v. *Gaynor*, 144 App. Div. 196; 202 N. Y. 615; *People ex rel. Deitz* v. *Hogan*, 214 N. Y. 216; *Emerson* v. *Buck*; 230 N. Y. 380; *Bohmer* v. *Haffen*, 161 N. Y. 390.) The provision requiring the Mayor to appoint a person from the same political party as the justice temporarily disabled, even if unconstitutional, can be severed from the remainder of the statute and still preserve an organic whole in full validity. (*People ex rel. Alpha P. C. Co.* v.

*Knapp*, 230 N. Y. 48; *People ex rel. Pratt* v. *Goldfogle*, 242 N. Y. 277; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377; *People ex rel. Woods* v. *Chrisey*, 91 N. Y. 616.) There is no unconstitutional removal or suspension. (*Matter of Emerson* v. *Buck*, 230 N. Y. 380; *Ramsay* v. *Hayes*, 187 N. Y. 367; *Schieffelin* v. *Hylan*, 236 N. Y. 254.)

*Arthur J. W. Hilly, Corporation Counsel* (*William E. C. Mayer* and *J. Joseph Lilly* of counsel), for Charles W. Berry, appellant. The Legislature acted within its powers in enacting chapter 436 of the Laws of 1929, which added section 4-a to the Municipal Court Code of the city of New York. (*Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377; *Matter of Guden*, 171 N. Y. 529; *McCabe* v. *City of New York*, 213 N. Y. 468; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *Matter of Emerson* v. *Buck*, 230 N. Y. 380; *Ramsay* v. *Hayes*, 187 N. Y. 367; *Matter of Kane* v. *Gaynor*, 144 App. Div. 196; 202 N. Y. 615; *People ex rel. Williamson* v. *McKinney*, 52 N. Y. 374; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540; *Lawton* v. *Steele*, 119 N. Y. 226; *Rathbone* v. *Wirth*, 150 N. Y. 459; *People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48; *Norton* v. *Shelby County*, 118 U. S. 425; *Van Antwerp* v. *State of New York*, 218 N. Y. 422; *People* v. *Dooley*, 171 N. Y. 74.) The complaint, on its face, does not state facts sufficient to constitute a cause of action. (*Matter of Cummings*, 142 App. Div. 377; *Greene* v. *Knox*, 175 N. Y. 432; *Corscadden* v. *Howe*, 177 N. Y. 499; *People* v. *Warden*, 154 App. Div. 413; *Scofield* v. *Whitelegge*, 49 N. Y. 259; *Rees* v. *Teachers' Retirement Board*, 247 N. Y. 372; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377.)

*Leonard M. Wallstein* and *Ralph M. Frink* for respondent. Chapter 430 of the Laws of 1929 is unconstitutional in its requirement of membership in a certain political party. (*Rathbone* v. *Wirth*, 6 App. Div. 277; 150 N. Y.

459; *Matter of Allison* v. *Welde*, 172 N. Y. 421; *People* v. *Dooley*, 171 N. Y. 74; *People ex rel. Swift* v. *Luce*, 204 N. Y. 478.) Chapter 430 of the Laws of 1929 is entire and not severable, so that this unconstitutional requirement invalidates the whole statute. (*Rathbone* v. *Wirth*, 150 N. Y. 459; *Matter of Markland* v. *Scully*, 203 N. Y. 158; *Sutherland* v. *Mead*, 80 App. Div. 103; *People* v. *Bromwich*, 200 N. Y. 385.) Chapter 430 of the Laws of 1929 is unconstitutional because it provides an unauthorized method of selecting Municipal Court judges. (*People* v. *Dooley*, 171 N. Y. 74.) Chapter 430 of the Laws of 1929 is wholly unconstitutional because it provides for an unconstitutional suspension of, or interference with the performance of duties by, a Municipal Court justice. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Rathbone* v. *Wirth*, 150 N. Y. 459; *People ex rel. Eldred* v. *Palmer*, 21 App. Div. 101; *Commonwealth* v. *Reid*, 265 Penn St. 328; *People ex rel. Burby* v. *Howland*, 155 N. Y. 270; *People ex rel. Holmes* v. *Lane*, 53 App. Div. 531.) Chapter 430 of the Laws of 1929 is unconstitutional because it violates the constitutional requirement of a term of office for justices of the Municipal Court. (*People ex rel. Joyce* v. *Brundage*, 78 N. Y. 403; *Matter of Batey*, 31 App. Div. 309; *Speed* v. *Crawford*, 60 Ky. 206; *State ex rel. Polk* v. *Galusha*, 74 Neb. 188; *State ex rel. Withers* v. *Stonestreet*, 99 Mo. 361; *Somer* v. *State*, 5 S. E. Rep. 321.)

HUBBS, J. This is a taxpayer's action to restrain the Comptroller of the city of New York from paying to the defendants Goldsmith and Fontanelli the salaries which they earned while serving temporarily as Municipal Court justices, on the ground that their appointments as temporary justices were illegal. The appointments were made pursuant to chapter 430 of the Laws of 1929, which added a new section (4-a) to the Municipal Court Code. It is contended that said statute is unconstitutional and void. It reads as follows: " Temporary appointments of

justices. If any justice is physically or mentally disabled so as to be unable to perform his duties, the mayor shall have authority to appoint a temporary justice who shall be a resident of the same district as the justice so disabled for a period not to exceed thirty days, upon the certificate of the president of the board of justices setting forth that owing to such disability the public interest requires the temporary appointment of a person in the place of the justice or justices thus disabled. Upon a similar certificate the mayor shall have authority at the expiration of such temporary appointment to renew such appointment from time to time for a period not exceeding thirty days. Any temporary justice appointed pursuant to the provisions of this section shall be a member of the same political party as the justice to whose office he has been appointed."

Justices Raimo and Whalen became disabled so as to be unable to perform their duties. The mayor, acting upon certificates of the president of the board of justices, made in pursuance of said section 4-a, and in accordance therewith, appointed the two said defendants temporary justices for periods not to exceed thirty days. They each filed an oath of office and entered upon the performance of the duties of temporary Municipal Court justices. Before the expiration of the said thirty-day appointments this action was commenced to restrain the Comptroller from paying them their salaries.

The constitutionality of the statute is attacked upon five grounds, stated by the learned attorney for the plaintiff in his brief as follows:

" Point I. That Chapter 430 of the Laws of 1929 is unconstitutional in requiring membership in a political party as a qualification for appointment to judicial office, contrary to the provisions of Article XIII, Section 1; Article I, Section 1; Article VI, Section 17, and Article X, Section 2, of the Constitution.

" Point II. That Chapter 430 of the Laws of 1929

is entire, and not severable, so that this unconstitutional requirement invalidates the whole statute.

"Point III. That Chapter 430 of the Laws of 1929 is wholly unconstitutional because it provides an unauthorized method of selecting the justices in violation of Article VI, Sections 17 and 19, and Article X, Section 2, of the Constitution.

"Point IV. That Chapter 430 of the Laws of 1929 is wholly unconstitutional because it provides for an unconstitutional suspension of Municipal Court justices or interference with the performance of their duties.

"Point V. That Chapter 430 of the Laws of 1929 is unconstitutional because it violates the constitutional system of a judicial term of office, recognized by Article VI, Sections 17 and 19."

If the purpose of the Legislature in enacting the statute was to enable all branches of the Municipal Court to continue in session and transact business even though one or more of its justices should be unable to act, the purpose was laudable. We must assume that the purpose of the Legislature was legitimate. Whether the purpose was wise is not for us to consider. (*Bohmer* v. *Haffen*, 161 N. Y. 390–399.)

It is of the greatest importance that the court dispose of the business coming before it with as little delay as possible in order that justice may not be delayed and the poor litigants who bring their small cases in that court may have speedy trials and decisions. We cannot impute to the Legislature an improper motive.

The powers of the Legislature in respect to the regulation of the Municipal Court are contained in article VI of the State Constitution, sections 17, 18 and 19.

Section 17, after providing for the election of justices of the peace prescribes: "* * * All other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, * * * shall be chosen by the electors of such cities, or appointed by

some local authorities thereof as may be prescribed by law * * * ''

Section 18 provides: " Inferior local courts of civil and criminal jurisdiction may be established by the legislature, * * *. All inferior local courts now or hereafter established may be regulated or discontinued by the Legislature. * * * ''

Section 19 provides: " * * * except as in this article provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct * * *.''

Except as restricted by the Constitution, the powers of the Legislature are unlimited and its enactments are presumed to be within its constitutional authority unless the contrary clearly appears. In construing a statute " if two constructions be permissible, then the one making the act valid must be adopted." (*Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377.)

Section 17 provides that justices of the Municipal Court be chosen by the electors or appointed " by some local authorities * * * as may be prescribed by law." Section 18 grants to the Legislature plenary power to establish, to regulate and to discontinue the Municipal Court. Section 19 reads: " except as in this Article provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct." The article does not otherwise provide for the election or appointment of Municipal Court justices. They are, therefore, to be elected or appointed " at such times and in such manner as the Legislature may direct."

These sections confer upon the Legislature express authority to determine the time and manner of election or appointment of Municipal Court justices, and to regulate and discontinue said court. We have no doubt that the Legislature, acting under the definite grant of power contained in the Constitution, was authorized to enact a statute to provide for a temporary appointment

of a Municipal Court justice to act during the disability of a regularly elected justice.

It is urged that the statute in question is unconstitutional because it provides, in the last sentence thereof, a test of office in violation of article I, section 1, and article XIII, section 1, of the Constitution. The sentence in question reads: " Any temporary justice appointed pursuant to the provisions of this section shall be a member of the same political party as the justice to whose office he has been appointed."

Article I, section 1, reads: " No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Article 13, section 1, gives the form of oath to be taken by public officials and then states: " and no other oath, declaration or test shall be required as a qualification for any office of public trust."

The plaintiff would have us decide that the requirement of the statute, that the person to be appointed temporarily to serve on the Municipal Court must be of the same political party as the justice temporarily disqualified, constitutes a test within the meaning of the Constitution and, therefore, renders the statute void.

It is elementary that courts will not decide constitutional questions unless directly and necessarily involved. The constitutional question suggested is not directly involved or essential to the determination. It does not appear from the record of which political party either of the elected justices was a member. Neither does it appear of which political parties the defendants temporarily appointed to serve as justices were members. For all that appears, the mayor, in making the appointments, did not pay the slightest attention to the provision of the statute which directs that the appointee shall be a member of the same political party as the justice who is temporarily disqualified. Even if we assume that the

provision of the statute is unconstitutional and void, we cannot assume that the mayor did not know it. In fact, the presumption is that he knew the law when the appointments were made and made them untrammeled by the provision in question. (*People ex rel. Woods* v. *Crissey*, 91 N. Y. 616, 622 and 623; *People ex rel. Angerstein* v. *Kenney*, 96 N. Y. 294.)

If we assume that the sentence in question is unconstitutional, it does not follow that the whole statute is void. It is a complete harmonious statute with that sentence deleted. It affords a complete and definite system for appointing temporary justices. The sentence in question adds nothing to and detracts nothing from the purpose of the act. The provisions of the act are not so interdependent that the act cannot operate without the sentence in question. It is not so related to the other provisions that it can be supposed that the Legislature would not have passed the act without it. (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48, 60.)

In the case of *Rathbone* v. *Wirth* (150 N. Y. 459), relied upon by the plaintiff, the court held that the provision of the statute in question which prescribed the method of appointment could not be severed from the other provisions of the statute, because the statute, read as a whole, made it apparent that its purpose was to change the political construction of the police department, and to strike out that provision would nullify the purpose of the Legislature. The decision is not in conflict with the holding in this case.

We are unable to concur in the contention that the statute is unconstitutional in that it violates article VI, section 17, of the Constitution by providing a dual method of choosing Municipal Court justices, by election and appointment. The Constitution provides that the choice of justices shall be made either by election or appointment. The Legislature has authority to adopt either method, but the method adopted must be exclu-

sive. The case of *People* v. *Dooley* (171 N. Y. 74) so decided. It is authority, however, only for the proposition that the Legislature is without power to enact that local judicial officers shall be appointed in certain districts of a municipality and elected in others. There must be a uniform method of choice in the same municipality; in the original selection of such officers for a full term. The present method of selection of Municipal Court justices for a full term is by election in districts, throughout the whole city. The selection of temporary justices, under the provisions of the statute in question, is by appointment only throughout the whole city. The practice prescribed is uniform, all temporary justices must be appointed by the mayor.

As a practical matter, it would be impossible to select temporary justices by election. Should the statute be held to be unconstitutional, on the last ground stated, the result would be to prevent the appointment of temporary justices unless the Legislature should change the method of original selection for a full term from election to appointment. We reach the conclusion that the Legislature acted within its constitutional authority in providing that temporary appointments of justices may be made as prescribed in the statute.

The temporary appointments were not in violation of article VI, section 17, of the Constitution in that such appointments constituted a removal or suspension of the elected justices or a shortening of the term for which said justices were elected. The elected justices continue in office. They continue to receive their salaries and may, during the time the temporary justices are serving, perform any of the functions of their offices, which they are physically and mentally able to perform.

The argument that there may be abuses of the authority granted cannot be considered by us. That was a matter for the Legislature to consider. " The legislature rightfully assumes that public officials will perform their

duties in good faith and with proper regard to the interests committed to them." (*Matter of Emerson* v. *Buck*, 230 N. Y. 380.)

The statute, if followed in good faith, will undoubtedly accomplish a desirable purpose. It will enable the Municipal Court to function in all of its branches even during the temporary disability of one or more of its justices.

The complaint fails to state a cause of action. The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division, and the question certified answered in the negative.

CRANE, J. (dissenting). Article VI, section 17, of the State Constitution reads: " All other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, including all judicial officers holding Courts of Special Sessions, Magistrates' Courts, or other inferior local courts of criminal jurisdiction in the city of New York, shall be chosen by the electors of such cities, or appointed by some local authorities thereof as may be prescribed by law."

This court decided in *People* v. *Dooley* (171 N. Y. 74) that the Legislature could adopt one or the other of these methods for the selection of the judges who came within this provision of the Constitution, but that the Legislature could not adopt both; in other words, that a magistrate could not be elected in one portion of the city, and appointed in another. The words of this court, which are also applicable to Municipal Court justices, are as follows: " The mandate of the Constitution is that judicial officers in cities, whose election or appointment is not otherwise provided for, shall be chosen by the electors of such cities or appointed by some local authorities thereof. This language is plain and unequivocal. It presents two distinct alternatives. Either may be

chosen. It must be one or the other. If the office is to be filled by appointment, the agency by which that is to be accomplished is broadly, yet clearly designated. If the officer is to be elected, the power of appointment is as plainly excluded. If this is not the fair and reasonable construction of this provision of the Constitution then it is within the power of the legislature to authorize the employment of both methods at the same time, in the same territorial or civil division, or in different divisions, either to suit the caprice of a day or the exigencies of a political condition. If judicial officers of the same grade, performing the same duties in the same local division, may be appointed in part and elected in part at the same time, we shall not have long to wait for such use of the power as will serve the selfish ends of the designing few at the expense of the public weal."

The case now before us comes squarely within the condemnation of this decision. By the New York City Municipal Court Code (Laws of 1915, ch. 279) the city of New York is divided into 'Municipal Court districts, with specified boundaries. Municipal Court justices are to be elected for terms of ten years by the electors of the several Municipal Court districts at the general election to be held in years at the end of which the respective terms of said justices shall expire. There shall be a president justice selected by the Mayor from among these elected justices. These Municipal Court justices by virtue of their office may administer oaths, take depositions and acknowledgments within the city of New York, and certify the same in the same manner and with like effect as justices of other courts of record. Their full powers are designated by the act.

The Legislature has added by chapter 430 of the Laws of 1929, taking effect the ninth of last April, section 4-a, permitting the mayor to appoint temporary justices. Under this act we may have two Municipal Court justices in the same district, one elected, and the

other appointed. In fact, if we consider a constitutional question from the viewpoint of what may be done, we may have two justices in any number of districts, one of whom is appointed, and the other elected. The section reads: " If any justice is physically or mentally disabled so as to be unable to perform his duties, the mayor shall have authority to appoint a temporary justice who shall be a resident of the same district as the justice so disabled for a period not to exceed thirty days, upon the certificate of the president of the board of justices setting forth that owing to such disability the public interest requires the temporary appointment of a person in the place of the justice or justices thus disabled. Upon a similar certificate the mayor shall have authority at the expiration of such temporary appointment to renew such appointment from time to time for a period not exceeding thirty days. Any temporary justice appointed pursuant to the provisions of this section shall be a member of the same political party as the justice to whose office he has been appointed."

While it is not at all likely that the Mayor will abuse this power, yet a constitutional power is always judged by that which may be done, and not by that which is likely to occur. Temporary designations may, therefore, be continued indefinitely.

An act which permitted the election of Municipal Court justices in Manhattan and the appointment of them in Brooklyn would clearly be unconstitutional. Yet we have here an act providing for the election of Municipal Court justices who, upon the certificate of a justice elected in another district, may be supplanted by an appointed officer. And these displacements or duplications may take place without number.

We need not discuss what is meant by physical or mental disability, or the extent to which the tired mind and exhausted body may justify the certificate for leave of absence. These are matters entirely within the judg-

ment of the Legislature, and we have nothing to do with them. We are dealing here simply with a question of power under the Constitution, as interpreted by this court in the *Dooley* case. These temporary justices taken from the bar and not elected, while serving would have the full power not only of trying cases and disposing of judicial matters, but also of performing all other administrative matters provided in the Municipal Court Act.

I, therefore, dissent.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and O'BRIEN, JJ., concur with HUBBS, J.; CRANE, J., dissents in opinion.

Ordered accordingly.